## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Maria Magdalena Alvarez Galvez, individually   :
and as the Guardian of her minor children, Heisha   :
Munoz and Clamil Munoz, et al.   :
  :
      Plaintiffs,   :
  :
         vs   :     Case No.
  :
Fanjul Corporation and Central Romana   :
Corporation, Ltd.,   :
  :
      Defendants.   :

### Complaint

Plaintiffs, Maria Magdalena Alvarez Galvez, et al., hereby bring a series of claims against the defendants, of which the following is a statement:

### Parties

1.     Plaintiff Maria Magdalena Alvarez Galvez is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor children, Heisha Munoz and Clamil Munoz.

2.     Plaintiff Maria Altagracia Calderon is an adult citizen and resident of the Dominican Republic.

3.     Plaintiff Carline Paul is an adult citizen and resident of the Dominican Republic.

4.     Plaintiff Domitila Mejia is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor grandchildren Erica de la Cruz Mejia, Erik de la Cruz Mejia, Nayeli de la Cruz Mejia and Yeri de la Cruz Mejia.

5.      Plaintiff Severa Jimenez is an adult citizen and resident of the Dominican Republic.

6.      Plaintiff Francisco Herrera de la Cruz is an adult citizen and resident of the Dominican Republic.

7.      Plaintiff Manuel Sterling is an adult citizen and resident of the Dominican Republic.

8.      Plaintiff Ana Alvarez Monte is an adult citizen and resident of the Dominican Republic.

9.      Plaintiff Ariana Marrero Altagracia is an adult citizen and resident of the Dominican Republic.

10.     Plaintiff Maria Jimenez is an adult citizen and resident of the Dominican Republic.

11.     Plaintiff Luz Clarita Sanchez is an adult citizen and resident of the Dominican Republic.

12.     Plaintiff Rafael Mancebo is an adult citizen and resident of the Dominican Republic.

13.     Plaintiff Carlos Manuel Alcantara is an adult citizen and resident of the Dominican Republic.

14.     Plaintiff Ruth D. Sena is an adult citizen and resident of the Dominican Republic.

15.     Plaintiff Ana Rosa Almonte is an adult citizen and resident of the Dominican Republic.

16.     Plaintiff Annoris Morales Jimenez is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor child Eliani Vicente Morales.

17.     Plaintiff Domingo Mejia is an adult citizen and resident of the Dominican Republic.

18.     Plaintiffs Emely Sierra and Edi Luis Jean, husband and wife, are adult citizens and residents of the Dominican Republic.  They sue on their own behalf and as the Guardians of their minor children Yeidi Sierra and Andreili Sierra.

19.     Plaintiff Jhonsi Arrollo is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor children Jendri Arroyo, Jhosito Arroyo and Jhojan Arroyo.

20.     Plaintiff Gertrudis Veloz Gomez is an adult citizen and resident of the Dominican Republic.

21.     Plaintiff Yefry Sierra Doroteo is an adult citizen and resident of the Dominican Republic.

22.     Plaintiff Juanita Coffils is an adult citizen and resident of the Dominican Republic.

23.     Plaintiff Dania Chala is an adult citizen and resident of the Dominican Republic.

24.     Plaintiff Nanci Avila is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor children Leslie Castillo, Fabela Alcantara and Daniel Alcantara.

25.     Defendant Fanjul Corp. ("Fanjul") is a Florida corporation with a principal place of business located in West Palm Beach, Florida.

26.     Defendant Central Romana Corporation, Ltd. ("Central Romana"), is incorporated under the laws of the British Virgin Islands and has a principal place of business located in the Dominican Republic.

### Jurisdiction and Venue

27.     This Court has subject matter jurisdiction over the international law and Dominican law claims asserted herein pursuant to 28 U.S.C. §1331 and the Alien Tort Claims Act, 28 U.S.C. §1350.  This Court may exercise supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2).

### Personal Jurisdiction

29.     This Court may exercise personal jurisdiction over Fanjul because, *inter alia*, it is a Florida corporation and transacts business in Florida and in this judicial district.  Thus, this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

30.     Fanjul is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in Florida.  Fanjul markets and distributes its products in Florida and through the Internet worldwide.  Fanjul's products enter the stream of commerce in Florida and it has availed itself of Florida's markets.

31.     Florida is the center of Fanjul's business activities.

32.     This Court may exercise personal jurisdiction over Central Romana pursuant to the Florida Long-Arm Statute, Fla. Stat. §48.193(1)(a) and (2), because, *inter alia*, Central Romana, on its own and through its agent and alter ego Fanjul, operates, conducts, engages in, and carries on a business and business ventures in Florida and throughout the United States and has an office in Florida, and is engaged in substantial activity within Florida and throughout the United States.  In addition, Central Romana maintains sufficient contacts with Florida such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

33.     Central Romana produces and distributes sugar throughout Florida and the United States under the brand names Domino, C&H, Redpath, Tate & Lyle and Florida Crystals. Central Romana has sugar refineries in New York, Maryland, Louisiana and California.  Central Romana markets its products in Florida, its products enter and exit the stream of commerce in Florida, and Florida residents are consumers of its sugar products.  Central Romana avails itself of Florida markets by placing its product in the stream of commerce in Florida with the intention that Florida consumers purchase them.

34.     Central Romana markets and distributes its products in retail stores throughout Florida, and through the Internet worldwide.

35.     Central Romana is and was, at all relevant times, engaged in commercial transactions in Florida and throughout the United States.

### *Background Facts*

36.     In two separate military-style incursions during the early morning hours of January 26, 2016, a public holiday in the Dominican Republic in honor of Juan Pablo Duarte, one of the founding fathers of the Dominican Republic, heavily armed agents, servants and/or

employees of Central Romana (the "Central Romana force") forcibly evicted approximately 60 families, including the Plaintiffs, from their homes in the Villa Guerrero neighborhood of El Seibo, without legal authority and without their consent.  After evicting the Plaintiffs and their neighbors, the Central Romana force destroyed their homes and personal property.

37.     While the Central Romana force was destroying their homes, they forcibly prevented the Plaintiffs and their neighbors from leaving the area.

38.     In carrying out the evictions and destruction of the Plaintiffs' homes, in some instances while the Plaintiffs and their children were still physically present in the homes, the Central Romana force physically injured many people, including some of the Plaintiffs.  For example:

a.     Plaintiff Maria Magdalena Alvarez Galvez, a single mother of two small children at the time of the evictions, one of whom suffers from asthma, did not want to leave the house during the evictions to avoid triggering an asthma attack for him.  The Central Romana force began destroying her home when she was still inside with her children, resulting in her son having being injured by a nail in his foot.  The Central Romana force threatened her directly: "They told us that they will come with a bulldozer and destroy our houses even if we are inside."

b.     Morena Then Sanchez, a single mother of four children at the time of the evictions, one of whom was sick that night, asked the Central Romana force not to destroy her home.  They ordered her out of the house and destroyed it.

c.     Plaintiff Francisco Herrera had surgery on his leg shortly before the evictions, and as a result, used crutches and had severely limited mobility.  The Central Romana force began destroying his home while he was still inside, and had he not screamed at them to allow him to leave his home before they destroyed it, he would have suffered serious injury.

       d.      Plaintiffs Emily Sierra and Edi Luis Jean were the parents of two young girls at the time of the evictions.  Their daughters were sleeping inside their home when the Central Romana force began to destroy it.

       e.      Manuel Isaias had an operation for cataracts in his eyes a few days before the evictions.  Due to the sudden movements he was subjected to by the Central Romana force during the evictions, he lost the sight in one of his eyes.

       39.      The Central Romana force aimed their weapons at the Plaintiffs and others, including children, and made direct threats of physical harm.

       40.      Plaintiffs have experienced severe psychological and emotional trauma and harm as a direct result of the actions of the Central Romana force.

***Fanjul and Central Romana are Interconnected and Interrelated to Such an Extent That the Acts of one are Tantamount to the Acts of the Other and Fanjul is Vicariously Liable for the Actions of Central Romana Under Both Agency and Alter Ego Theory***

       41.      Fanjul is the head of a sugar empire owned, operated and/or controlled by the Fanjul family, which consists of the following entities:

           Fanjul Corp.
           Central Romana Corporation Ltd.
           Florida Crystals Food Corp.
           Florida Crystals Corporation[1]
           American Sugar Refining, Inc.
           ASR Group International, Inc.
           Agro-Industrial Management, Inc.
           Agro-Industrial Management II, Inc.
           Domino Foods, Inc.
           C & H Sugar Company, Inc.
           Sugar Farms Co-op[2]
           America's Export Corporation

---

[1] Fanjul played a principal role in the creation of Florida Crystals Corporation in 1997.  Florida Crystals Corporation was created by combining and consolidating the Florida sugar operations of various entities, with Fanjul contributing stock in its subsidiaries to Florida Crystals Corporation.  The principal entities involved in the creation of Florida Crystals Corporation, in addition to Fanjul, were Okeelanta Corporation, New Hope Sugar Company and other indirect subsidiaries of Fanjul.

[2] Sugar Farms Co-op is involved in the cultivation of sugar cane in Florida.

Okeelanta Corporation[3]
New Hope Sugar Company

The interconnectedness of these entities in terms of their ownership is clear:

a.   Fanjul (the successor of Flo-Sun, Inc.) owns 5,100 shares of Agro-Industrial Management, Inc. (the successor of Flo-Sun Sugar Company).

b.   Fanjul owns 673,640 shares (72%) of Florida Crystals Corporation.

c.   Agro-Industrial Management, Inc. owns 1,050 shares (35%) of Central Romana

d.   Sugar Farms Co-op is an indirect subsidiary of Fanjul because Fanjul owns 72% of Florida Crystals Corporation, and through a series of subsidiaries, Florida Crystals Corporation controls Sugar Farms Co-op.

e.   Okeelanta Corporation operates as a subsidiary of Florida Crystals Corporation.

e.   Americas Export Corporation is a subsidiary of Florida Crystals Corporation.

f.   Agro-Industrial Management II, Inc. is a subsidiary of Florida Crystals Corporation.

42.   The interconnectedness of these entities in terms of their governance (as between the officers and directors of Fanjul on the one hand, and the entities that comprise the Fanjul sugar empire on the other) is also clear, and most striking with respect to the members of the Fanjul family (Alfonso Fanjul Jr., Jose Fanjul Sr., Jose Fanjul Jr., Alexander Fanjul and Andres Fanjul) and Armando A. Tabernilla:

**Alfonso Fanjul Jr.**

Chairman, CEO and Director of Fanjul Corp.
Chairman, CEO and Director of Florida Crystals Corporation
Chairman, President and Director of Central Romana Corporation Ltd
Chairman of Okeelanta Corporation

**Jose Fanjul Sr.**

---

[3] Okeelanta Corporation is engaged in the farming, milling, packaging and distribution of sugar cane.

8

Vice Chairman, President, Chief Operating Officer and Director of Fanjul Corp.
Vice Chairman, President, Chief Operating Officer and Director of Florida Crystals Corp.
Vice President and Director of Central Romana Corporation Ltd

**Jose Fanjul Jr.**

Vice President of Fanjul Corp.
Executive Vice President and Director of Florida Crystals Corporation
Director of Central Romana Corporation Ltd
Director of ASR Group International, Inc.
Director of American Sugar Refining, Inc.
Director of Domino Foods, Inc.

**Andres Fanjul**

Vice President and Director of Fanjul Corp.
Vice President of Florida Crystals Corporation

**Alexander Fanjul**

Director of Fanjul Corp.
Sr. Vice President of Florida Crystals Corporation

**Armando A. Tabernilla**

Vice President, General Counsel, Secretary and Director of Florida Crystals Corporation
Vice President, General Counsel, Secretary and Director of ASR Group International Inc.
Vice President, General Counsel and Secretary of American Sugar Refining, Inc.
Vice President, General Counsel, Secretary and Director of Domino Foods, Inc.
Vice President, General Counsel and Secretary of C & H Sugar Company, Inc.
Vice President and General Counsel of Agro-Industrial Management, Inc.
Registered Agent for Sugar Farms Co-op
Registered Agent for Okeelanta Corporation
Registered Agent for Agro-Industrial Management II, Inc.
Registered Agent for Americas Export Corporation
Registered Agent for New Hope Sugar Company

**Luis Fernandez**

Vice President of Fanjul Corp.
Officer and Director of Florida Crystals Corporation
Co-President and Director of ASR Group International, Inc.
Co-President and Director of American Sugar Refining, Inc.
Co-President and Director of Domino Foods, Inc.

Director of Central Romana Corporation, Ltd.

**Philip Zukowski**

Vice President of Taxation of Fanjul Corp.
Vice President of Taxation of Florida Crystals Corporation
Vice President of Taxation of ASR Group International, Inc.
Vice President of Taxation of American Sugar Refining, Inc.
Vice President of Taxation of Domino Foods, Inc.
Vice President of Taxation of C & H Sugar Company, Inc.

**William F. Tarr**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation
Vice President of Agro-Industrial Management, Inc.
Vice President of Florida Crystals Food Corporation

**Erik J. Blomqvst**

Vice President and Treasurer of Fanjul Corporation
Sr. Vice President, Treasurer and Director of Florida Crystals Corporation
Director of Domino Foods, Inc.

**Alfonso Fierro**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Lillian Azqueta**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**David Patterson**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Christine M. Winterburg**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

**Parks D. Shackelford**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

43.     In documents filed with the Chamber of Commerce and Trade in La Romana,

Dominican Republic, Alfonso Fanjul and Jose Fanjul are identified as two officials of Central

Romana with authority to borrow from financial institutions in the name of Central Romana.

44.     The interconnectedness of these entities in terms of their operations is also clear:

a.     The principal function of Agro-Industrial Management, Inc. is to provide
       management services to Florida Crystals Corporation (and its 20-50 subsidiaries),
       ASR Group International, Inc. (and its approximately 20 subsidiaries), American
       Sugar Refining, Inc., Domino Foods, Inc., C & H Sugar Company and Senshi
       Rice Products, Inc.

b.     Florida Crystals Corporation pays on behalf of Fanjul "the normal payments that
       Fanjul would have to make by virtue of being in existence and operating as a
       corporation."  Such payments include payments to Fanjul's independent auditor
       of its annual audit fee, and payments of tax advice and legal fees on behalf of
       Fanjul.  Fanjul reimburses Florida Crystals Corporation for the payments.  Florida
       Crystals Corporation also assists in the administration of Fanjul's bank accounts
       at Wells Fargo and Bank of America.

c.     Domino Foods, Inc. is the sales and marketing entity for American Sugar
       Refining, Inc., C & H Sugar Company, Inc. and Florida Crystals Food Corp.

d.     American Sugar Refining, Inc. periodically indirectly buys raw sugar from
       Central Romana, who offers the sugar it is allowed to import into the United
       States for bid.  ASR Commodities LLC, a subsidiary of American Sugar Refining,
       Inc. bids on the sugar, and periodically is the successful bidder.

e.     The raw sugar American Sugar Refining, Inc. purchases from Central Romana is
       loaded in the Dominican Republic, shipped in ocean-going vessels, and off-loaded
       at one of American Sugar Refining, Inc.'s refineries along the East Coast
       (Yonkers, New York or Baltimore, Maryland).

f.     At any point in time, there are payables and receivables among ASR Group
       International, Inc., American Sugar Refining, Inc., C & H Sugar Company, Inc.
       and Domino Foods, Inc.

g.     At any point in time, there are payables and receivables (intercompany balances)
       between Florida Crystals Corporation and Florida Crystals Food Corporation.

h.      Florida Crystals Corporation consolidates its tax returns with Florida Crystals
        Food Corporation.  ASR Group International, Inc. files a tax return that includes
        the financial performance of American Sugar Refining, Inc. and C & H Sugar
        Company, Inc.

i.      Employees of American Sugar Refining, Inc. travel to the Dominican
        Republic to inspect or have discussions with Central Romana employees
        regarding the raw sugar it purchases and quality issues related to that sugar.

j.      Americas Export Corporation purchases equipment and goods for resale to
        Central Romana.  It purchases equipment that would be used in the sugar
        operations of Central Romana and purchases goods that would be used in the
        resort business of a subsidiary of Central Romana.

45.     These entities are also connected in other ways relevant to personal jurisdiction

vicarious liability:

a.      Mr. Tabernilla has traveled to Central Romana's offices in the Dominican
        Republic in connection with a proposed Florida Crystals Corporation investment
        there.

b.      American Sugar Refining, Inc. owns real property in New York, Maryland,
        Louisiana, California and Ohio.  The properties in New York, Maryland,
        Louisiana and California are sugar refineries and the property in Ohio is a
        packaging plant.

c.      Domino Foods, Inc. leases office space in New Jersey for its headquarters. Its
        sales force is located in a variety of locations, with some working from home.
        They create and disseminate promotional material relating to Domino products,
        do some advertising in newspapers and magazines, and advertise on social media.
        The sales force is organized based on the types of customers that are solicited
        (i.e., industrial, food service, retail and specialty).

d.      American Sugar Refining, Inc. owns the trademark "Domino."

e.      The Consignee on a representative shipment of raw sugar from Central Romana to
        the American Sugar Refining, Inc. refinery in Baltimore, MD, ASR Group
        Commodities, has the same address (1 Federal Street, Yonkers NY) as the
        American Sugar Refining, Inc. refinery in Yonkers NY.

***This Case Must be Tried in This Court Because the
Dominican Republic is not an Adequate Forum for This Case***

46.     The Dominican Republic is not an adequate forum for this case.

47.     The Dominican courts are notoriously corrupt. That corruption has even been acknowledged by the Dominican government itself, which chose to file suit in an American court against an American corporation for environmental harm caused by an illegal dumping of toxic material on a beach in the Dominican Republic.  *See*, *generally*, *Dominican Republic v. The AES Corporation, et al*., 466 F. Supp. 2d 680 (E.D. Va. 2006).

48.     Fanjul is the largest landholder and largest employer in the Dominican Republic, as well as the leading producer of sugar in the Dominican Republic.  Fanjul wields outsized influence in the Dominican Republic, including in government and the judicial system.  Given its influence, Plaintiffs would not have a fair opportunity to fully litigate their claims.

49.     The so-called private factors, which are relevant to whether the Dominican Republic is an adequate forum, indicate that this case must remain in this Court.

a.     Access to evidence and relevant sites.

The evidence necessary for Plaintiffs to prove their claims is located both in the United States and the Dominican Republic.  Evidence concerning the basis of the decision to utilize the Central Romana agents to forcibly evict the Plaintiffs from their homes is in the possession of Fanjul (in Florida) and Central Romana (in the Dominican Republic).  Evidence concerning the specifics of the military-style operations mounted by the Central Romana force principally is located in the Dominican Republic.  Evidence concerning the physical and emotional injuries suffered by the Plaintiffs can be obtained from the Plaintiffs in the Dominican Republic.  Although some of the relevant documents may be in Spanish is of minor significance.  The use of translators in court proceedings is a normal practice, particularly in Florida, which has a large Spanish-speaking population, as is the translation of documents from Spanish to English.  And although a site visit might be desired, traveling to the Dominican Republic to inspect the site of

the forcible evictions poses no particular problems. The Dominican Republic is no more convenient than Florida with respect to access to sources of proof in this case, and no more expensive.

      b.     Access to witnesses.

The key liability and damages witnesses are located in both the Dominican Republic and the United States.  These witnesses include the Plaintiffs, employees of Central Romana, and employees of Fanjul.  It is not possible to quantify the number of key witnesses located in the Dominican Republic and the number located in the United States.  Nor can it be said that any key witnesses would be beyond the jurisdiction of this Court or subject only to the authority of the Dominican courts, or would not otherwise agree to provide testimony in this case.

      c.     Practicalities and expenses associated with litigation.

Although discovery and trial of this case will be expensive and time-consuming, the challenges presented by this case exist regardless of whether it is litigated here or in the Dominican Republic.  Expert witnesses would be required in both jurisdictions, as would translators and translation services, as well as travel and lodging expenses.  The only significant logistical and cost difference between trial in Florida and trial in the Dominican Republic would be those associated with securing the attendance of the Plaintiffs at trial in Florida.

     50.     The so-called public factors, which also are relevant to whether the Dominican Republic is an adequate forum, indicate that this case must remain in this Court.

      a.     This action has a substantial connection to Florida.

Despite the fact the Plaintiffs reside in the Dominican Republic and were injured in the Dominican Republic, some of the decisions that resulted in their injuries were made in Florida. Specifically, decisions concerning whether and why to assemble the Central Romana force and

to forcibly evict the Plaintiffs, critical decisions which resulted in injury to the Plaintiffs, likely were made in part by Fanjul employees in Florida.

      b.     Florida has an interest in the outcome of this case.

Because critical decisions that resulted in injury to the Plaintiffs likely were made by Florida residents, Florida has an interest in ensuring that its residents act in a manner that does not unnecessarily cause injury to others and in punishing wrongdoers.  Florida has an interest in overseeing the conduct of entities and individuals who carry out activities in Florida that have an adverse impact outside of Florida.  These interests justify having a local jury decide this case, with the attendant impact on local judicial resources.

      c.     This Court is competent to resolve issues of Dominican law.

For this Court to apply Dominican law will not be a substantial undertaking.  This Court can obtain its own expert on Dominican law to provide guidance, and doing so will not be an onerous burden.  Moreover, the Plaintiffs will be severely prejudiced if they are forced to refile this case in the Dominican Republic.

51.     As a direct and proximate result of the foregoing actions of defendants, the Plaintiffs have suffered the injuries and damages alleged above, as well as:

      a.     continuing mental anguish, psychological and emotional injury;

      b.     loss of enjoyment of life's pleasures;

      c.     medical and healthcare expenses;

      d.     moral damages; and

      e.     such other damages as may be allowed by law or equity.

***Count I***
***Violation of Article 59 of the Dominican Republic Constitution***

52.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-51, inclusive, of this Complaint.

53.     Article 59 of the Dominican Republic Constitution provides as follows:

Article 59: Right to Housing

All persons have the right to dignified housing with basic essential services.  The State should determine the necessary conditions to make effective this right and promote plans for housing and human settlements in the social interest.  Legal access to titled real estate is a fundamental priority of public policy and the advancement of housing.

54.     Under Dominican law, evictions without a court order violate the right to housing provided for in Article 59 of the Dominican Republic Constitution.

55.     Defendants forcibly evicted the Plaintiffs from their homes without a valid court order, and thereby violated Article 59 of the Dominican Republic Constitution.

56.     Because defendants destroyed the Plaintiffs' homes as part of the forcible eviction operations, defendants are liable to the Plaintiffs for monetary damages.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count I, awarding them all damages available under law and equity.

### Count II
***Violation of the right to judicial process and due process codified in
Article 8.1 of the Inter-American Convention on Human Rights and
Article 14 of the International Covenant on Civil and Political Rights***

57.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-56, inclusive, of this Complaint.

58.     The right to judicial process and due process is fundamental to the ability of individuals to enjoy a life of dignity and is firmly established in international human rights law.

59.     For example, Article 8.1 of the Inter-American Convention on Human Rights provides:

Article 8. Right to a Fair Trial

1. Every person has the right to a hearing, with due guarantees and within a reasonable time, by a competent, independent, and impartial tribunal, previously established by law, in the substantiation of any accusation of a criminal nature made against him or for the determination of his rights and obligations of a civil, labor, fiscal, or any other nature.

60.     The Dominican Republic signed the Inter-American Convention on Human

Rights, without reservation, on September 7, 1977 and ratified it on January 21, 1978.

61.     Article 14.1 of the International Covenant on Civil and Political Rights provides:

Article 14.   1.   All persons shall be equal before the courts and tribunals.   In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law.   The Press and the public may be excluded from all or part of a trial for reasons of morals, public order (ordre public) or national security in a democratic society, or when the interest of the private lives of the parties so requires, or to the extent strictly necessary in the opinion of the court in special circumstances where publicity would prejudice the interests of justice; but any judgment rendered in a criminal case or in a suit at law shall be made public except where the interest of juvenile persons otherwise requires or the proceedings concern matrimonial disputes or the guardianship of children.

62.     The Dominican Republic ratified the International Covenant on Civil and Political

Rights on January 4, 1978 and it entered into force on April 4, 1978.

63.     The international instruments discussed above all confirm the right to judicial

process and due process as part of the fabric of established international human rights law.

64.     Defendants planned, organized and implemented the forcible eviction operations

without a valid court order and without affording the Plaintiffs the right to judicial process and

due process to which they were entitled under generally accepted norms of international law.

65.     The actions and omissions of the defendants described above violated the

Plaintiffs' right to judicial process and due process, which violation is actionable under the Alien

Tort Claims Act, 28 U.S.C. §1350.

66.     As a direct and proximate result of the defendants' violation of their right to judicial process and due process, the Plaintiffs sustained the injuries and damages described above.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count II, awarding them all damages available under law and equity.

## Count III
### Violation of Article 1382 of the Dominican Civil Code

67.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-66, inclusive, of this Complaint.

68.     Article 1382 of the Civil Code of the Dominican Republic provides:

Art. 1382.  Every act of a person that causes injury to another obligates the one by whose fault it occurred to compensate it.

69.     Under Dominican law, Article 1382 of the Civil Code provides a cause of action for intentional wrongdoing.

70.     A defendant is liable under Article 1382 when the defendant commits an act against the right of another or the defendant exercises his own right in an abusive manner.

71.     Based upon the actions and omissions of the defendants alleged above, defendants are liable to the Plaintiffs under Article 1382.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count III, awarding them all damages available under law and equity.

## Count IV
### Violation of Article 1383 of the Dominican Civil Code

72.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-71, inclusive, of this Complaint.

73.     Article 1383 of the Civil Code of the Dominican Republic provides:

Art. 1383.  Everyone is responsible for the damage that he causes not only by his own act, but also by his negligence or imprudence.

74.     Under Dominican law, Article 1383 provides a cause of action for unintentional acts or omissions.

75.     Under Dominican law and Article 1383, the standard for determining fault or negligence is an error of conduct that would not have been committed by a normal person under equal exterior conditions or by a careful person placed under the same circumstances.

76.     Based upon the actions and omissions alleged above, defendants are liable to the Plaintiffs under Article 1383.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants under Count IV, awarding them all damages available under law and equity.

*Count V*
*Assault*

77.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-76, inclusive, of this Complaint.

78.     The actions of the defendants against the Plaintiffs alleged above demonstrate a) an intentional, unlawful threat, b) the apparent ability to carry out the threat, and c) creation of a well-founded fear that violence was imminent.

79.     The Central Romana force intended to destroy the Plaintiffs' homes while they were present and could observe the destruction of their homes, and intended to do so regardless of the physical danger that doing so might cause to the Plaintiffs and with the knowledge that doing so would cause an imminent fear of violence amongst the Plaintiffs.

80.     The actions of the defendants created a well-founded fear of physical violence in the Plaintiffs, as it would have in any reasonable person under similar circumstances.

81.     The actions of the defendants constitute assault under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count V, awarding them all damages available under law and equity.

### Count VI
### Battery

82.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-81, inclusive, of this Complaint.

83.     Based upon the actions of the defendants alleged above, defendants intended to cause, and did cause, a harmful and offensive contact, and/or the imminent apprehension that such contact would occur, with the Plaintiffs.

84.     The actions of the defendants constitute battery under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count VI, awarding them all damages available under law and equity.

### Count VII
### False Imprisonment

85.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-84, inclusive, of this Complaint.

86.     In connection with the forcible eviction operations, defendants imprisoned Plaintiffs against their will.

87.     Defendants' detention of the Plaintiffs in connection with the forcible eviction operations was unreasonable and unwarranted under the circumstances.  Specifically, there was no legitimate reason for defendants to refuse to allow Plaintiffs to leave while the Central Romana force destroyed their homes.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count VII, awarding them all damages available under law and equity.

### Count VIII
### Forcible Entry and Detainer

88.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-87, inclusive, of this Complaint.

89.     Defendants destroyed Plaintiffs' homes and dispossessed them of their real property without consent or legal process.

90.     Plaintiffs were in peaceful possession of their homes prior to the forcible eviction operations.

91.     Plaintiffs were forcibly evicted from their homes

92.     Plaintiffs were forcibly evicted from their homes without consent or legal authorization.

93.     In the alternative, even if the Plaintiffs did not have lawful possession of their homes, as defendants claim, defendants are liable to the Plaintiffs because the forcible eviction operations were not peaceable.

94.     In the alternative, even if the Plaintiffs were transient occupants of their homes, they are entitled to recover damages against defendants because defendants unreasonably withheld access to the Plaintiffs' personal belongings.

Wherefore, Plaintiffs here by demand judgment in their favor and against defendants on Count VIII of the Complaint, awarding them all damages available under law and equity.

### Count IX
### Intentional Infliction of Emotional Distress

95.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-94, inclusive, of this Complaint.

96.     Defendants deliberately and/or recklessly inflicted mental suffering on the Plaintiffs as a result of the forcible eviction operations.

97.     Defendants' conduct was outrageous.

98.     Defendants' conduct caused extreme emotional distress to the Plaintiffs.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count IX of the Complaint, awarding them all damages available under law and equity.

### *Jury Trial Demand*

99.     Plaintiffs demand a trial by jury as to all claims so triable.

*s/ Shauna Curphey*
Shauna Curphey, Florida Bar No. 0109667
scurphey@curpheylaw.com
Curphey Law, LLC
6300 North Wickham Road, Suite 130 #305
Melbourne, FL  32940
Telephone: 503-241-2848

and

Robert T Vance Jr
rvance@vancelf.com
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
Telephone: 215 557 9550 / Fax: 215 278 7992

*Attorneys for the Plaintiffs*