## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-80123-RAR

MARIA     MAGDALENA     ALVAREZ
GALVEZ, individually and as the Guardian of
her minor children, HEISHA MUNOZ and
CLAMIL MUNOZ, *et al*.,

         Plaintiffs,

v.

FANJUL CORP.,

         Defendant.

_____/

## **FANJUL CORP.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs seek to hold Fanjul Corp. ("Fanjul") liable for the conduct of Central Romana Corporation, Ltd. ("Central Romana"), a company in which Fanjul indirectly owns a 35% minority interest. Plaintiffs allege no conduct by Fanjul that caused them any harm.

Although this case centers entirely on what Central Romana allegedly did, Plaintiffs have dropped the company as a defendant in order to plead alienage jurisdiction under 28 U.S.C. § 1332(a)(2). But the Amended Complaint does nothing to overcome the Court's prior holding that Plaintiffs "insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana." (D.E. 53 at 23.) Further, Plaintiffs' claims fail because American law is inapplicable to the entirely extraterritorial conduct Plaintiffs allege, and Plaintiffs' claims are time-barred by the statutes of limitations that govern under Dominican Republic law. Finally, the choice to drop Central Romana as a defendant dooms Plaintiffs' claims because Central Romana is an indispensable party that cannot be joined without depriving the Court of subject matter jurisdiction. For all of these reasons, the Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

Plaintiffs are citizens and residents of the Dominican Republic. (D.E. 56 ¶¶ 1-24.) They allege that, on January 26, 2016, "agents, servants and/or employees" of non-party Central Romana forcibly evicted Plaintiffs from their homes "in the Villa Guerro neighborhood of El Seibo, Dominican Republic." (*Id.* ¶ 29.) According to Plaintiffs, this "Central Romana force" evicted them "without legal authority and without their consent," "destroyed their homes and personal property," and "physically injured many people, including some of the Plaintiffs." (*Id.* at ¶¶ 29, 31.) Plaintiffs allege that they have experienced "psychological and emotional trauma and harm as a direct result of the actions of the Central Romana force." (*Id.* ¶ 33.)

Plaintiffs allege no acts by Fanjul that could form the basis for liability. Instead, Plaintiffs seek to hold Fanjul "vicariously liable to the Plaintiffs for the actions of the Central Romana force under both agency and alter ego theory." (*Id.* ¶ 35.) Plaintiffs allege that Fanjul indirectly owns 35% of Central Romana's shares through a subsidiary. (*Id.* ¶¶ 37a, 37c.) Plaintiffs also allege that Fanjul and Central Romana have four overlapping officers and directors. (*Id.* ¶¶ 39-41.)

Plaintiffs brought this action on January 27, 2020, four years after the alleged evictions. (D.E. 1.) The Court dismissed their original complaint because it lacked subject matter jurisdiction under the Alien Tort Statute, could not exercise federal question jurisdiction over Plaintiffs' claims, and lacked alienage jurisdiction while Central Romana was a defendant. (D.E. 53 at 18-20.) The Court also held "that Plaintiffs ha[d] insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana." (*Id.* at 23.)

"[I]n an abundance of caution," the Court allowed Plaintiffs to amend their complaint to plead alienage jurisdiction without Central Romana. (*Id.* at 25.) But the Court noted that there were "several potential issues with Plaintiffs' case were they to amend the Complaint in this manner." (*Id.* at 24.) First, the Court was "doubtful that the state common law claims Plaintiffs assert . . . are

viable based on the extraterritorial nature of the acts alleged in the Complaint." (*Id.* at 24-25.) Second, the Court stated that "it is likely that Central Romana is an indispensable party under Fed. R. Civ. P. 19 and therefore cannot be dropped from this action." (*Id.* at 25.)

## LEGAL STANDARD

A plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations" and "unwarranted factual deductions" will not prevent dismissal. *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003). While the Court is required to accept as true all allegations contained in the Amended Complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." (D.E. 53 at 20 (citations omitted).)

## ARGUMENT

**I.**     **Plaintiffs have failed to allege any basis on which to hold Fanjul vicariously liable for Central Romana's alleged conduct.**

In its order granting the motion to dismiss the original complaint, this Court detailed the facts that Plaintiffs must allege to state a viable claim against Fanjul under an alter ego or agency theory of liability. (D.E. 53 at 20-23.) Instead of pleading facts sufficient to address the Court's reasoning, Plaintiffs have recycled their allegations that Fanjul and Central Romana are "interconnected and interrelated." (D.E. 56 ¶ 35.) As a result, the Court's earlier analysis applies and dictates the same result. Plaintiffs have once again "insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana." (D.E. 53 at 23.)

### A.     **Plaintiffs have not alleged facts sufficient to find Fanjul liable as Central Romana's alter ego.**

As this Court previously held (D.E. 53 at 20-21), to plead a claim for piercing the corporate veil under Florida law, a plaintiff must allege that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-

existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)) (emphasis omitted). The complaint must "explain how [d]efendants allegedly abused the corporate form." *Oginsky v. Paragon Props. of Costa Rica, LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (dismissing defendant for failure to allege facts to establish alter ego liability). "[T]he veil-piercing elements under federal common law [and Florida law] are substantially similar . . . ." (D.E. 53 at 21.)

In granting the prior motion to dismiss, the Court held that "Plaintiffs do not allege how Fanjul controls or dominates Central Romana to such an extent that the Court should disregard the corporate entity. Nor do Plaintiffs advance any allegations of improper or fraudulent use of the corporate form." (*Id.* at 22.) Because the same is true with regard to the Amended Complaint, Plaintiffs have failed to plead a viable alter ego claim.

In the Amended Complaint, Plaintiffs again rely heavily on "seemingly irrelevant facts relating to the other non-defendant entities that are part of the Fanjul's 'sugar empire.'" (D.E. 53 at 21-22.) Plaintiffs repeat their prior allegations that Fanjul, Central Romana, and twelve other entities have commonalities in ownership (D.E. 56 ¶ 37), officers and directors (*id*. ¶¶ 39, 41), and operations (*id*. ¶ 44). And Plaintiffs now allege that Central Romana made eight shipments of sugar to *Okeelanta Corp*. in the United States and point to an organizational chart of unknown origin that allegedly "describe[s] Central Romana as a subsidiary of *Florida Crystals*." (D.E. 56 ¶¶ 38, 45; D.E. 56-1 at 2 (emphasis added).) The only entities relevant to the alter ego analysis are Central Romana, which Plaintiffs allege evicted them, and Fanjul, which Plaintiffs seek to hold vicariously

liable for Central Romana's conduct. The alleged connections among a dozen other companies are immaterial to whether Fanjul is Central Romana's alter ego. *See Molinos*, 633 F.3d at 1351.

Plaintiffs again allege that Fanjul owns 35% of Central Romana's shares through a subsidiary and that four people serve as officers or directors for both Fanjul and Central Romana. (D.E. 56 ¶¶ 37a, 37c, 39, 41.) But as this Court correctly held before (D.E. 53 at 22), "[c]ommon ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability." *First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*, No. 07-0682, 2008 WL 816973, at *6 (M.D. Fla. Mar. 25, 2008) (quoting *Weiss Capital Mgmt., Inc. v. Crowder*, 964 So. 2d 865, 866 (Fla. 4th DCA 2007)). Even a complete identity of ownership and directors between two entities is "an insufficient basis for applying an alter ego theory." *Garcia v. Gravity Interactive, Inc.*, No. 10-62162, 2012 WL 13005342, at *5 (S.D. Fla. Jan. 17, 2012) (citing *Weiss Capital Mgmt., Inc.*, 964 So. 2d at 867 and *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)).

Further, Plaintiffs allege nothing to suggest how Fanjul could dominate and control Central Romana as an indirect, *minority* shareholder. Nor do Plaintiffs allege facts showing that Fanjul dominates Central Romana merely because four persons serve as officers or directors for both companies. Plaintiffs do not allege, for example, that these four individuals unilaterally control the decision-making of either company. To the contrary, according to Plaintiffs, Fanjul has at least five other directors and six other officers. (D.E. 56 ¶¶ 39, 41.)

Plaintiffs allege that two directors of Fanjul have "the right to exercise financial control over Central Romana." (D.E. 56 ¶ 43.) But that allegation does not show that Fanjul dominated and controlled Central Romana "to such an extent that [Central Romana's] independent existence was in fact nonexistent." *S-Fer Int'l, Inc. v. Stonesheets, LLC*, No. 14-24662, 2016 WL 8808749,

at *4 (S.D. Fla. July 22, 2016) (holding that an alter ego theory was insufficiently pleaded). Plaintiffs allege that those two Fanjul directors are also officers and directors of Central Romana (D.E. 56 ¶¶ 39, 43), so their ability to exercise some degree of financial control over Central Romana is both unsurprising and insufficient to pierce the corporate veil. *See First Auto. Serv. Corp.*, 2008 WL 816973, at *6; *Garcia*, 2012 WL 13005342, at *5.

Finally, Plaintiffs have once again failed to allege that Fanjul "abused the corporate form," *S-Fer Int'l*, 2016 WL 8808749, at *4, or used the corporate form "fraudulently or for an improper purpose," *Molinos*, 633 F.3d at 1349. (D.E. 53 at 22.) To plead this element, Plaintiffs must allege that Central Romana "was a mere device or sham to accomplish some ulterior purpose" of Fanjul. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (quoting *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984)). Examples of such allegations include "where creditors are misled and defrauded or where the corporation is created for some illegal purpose or to commit an illegal act." *Id.* (quoting *State ex rel. Cont'l Distilling Sales Co. v. Vocelle*, 27 So. 2d 728, 729 (Fla. 1946)). Nothing in the Amended Complaint remotely approaches those standards. Rather, Plaintiffs describe Fanjul and Central Romana as related but separate companies conducting routine business. (*See, e.g.,* D.E. 56 ¶¶ 38, 44-45.) If the allegations in the Amended Complaint sufficiently plead an alter ego theory of liability, then such a theory will apply to nearly every company with subsidiaries. That is not the law.

Alter ego liability applies "only in exceptional cases." *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1320 (quoting *Cont'l Distilling Sales Co.*, 27 So. 2d at 729). Courts may not "easily disregard th[e] fiction" of the corporate form. *Molinos*, 633 F.3d at 1349. This Court has already rejected Plaintiffs' alter ego theory once. The Amended Complaint does not overcome the fatal flaws that this Court previously identified.

**B.      Plaintiffs have failed to allege sufficient facts to support Fanjul's vicarious liability based on general agency principles.**

As the Court held in granting the first motion to dismiss (D.E. 53 at 22), to hold a parent company liable as the principal of a subsidiary-agent, Plaintiffs must allege "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Salinero v. Johnson & Johnson*, No. 18-23643, 2019 WL 4585215, at *3 (S.D. Fla. Sept. 20, 2019) (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998)); *see also Garcia*, 2012 WL 13005342, at *6. The parent corporation "must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Salinero*, 2019 WL 4585215, at *3 (internal quotation marks omitted).

The Amended Complaint—like the original complaint—"is devoid of allegations that would support these elements of acknowledgement, acceptance, or control." (D.E. 53 at 23.) Plaintiffs added no factual allegations to satisfy the requirements for pleading an agency relationship. Instead, Plaintiffs simply parroted the legal elements for such a claim, pleading that "Central Romana was acting as Fanjul's agent with respect to the unlawful evictions, it accepted the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's control with respect to the unlawful evictions." (D.E. 56 ¶ 55.) The Court is "not bound to accept as true [this] legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quotation omitted). Because Plaintiffs offer only "a formulaic recitation of the elements of" agency liability, they fail to state a viable claim for relief against Fanjul under that theory. *Twombly*, 550 U.S. at 555.

**II.     The Court should dismiss Plaintiffs' common law claims because state law is inapplicable to the entirely extraterritorial conduct alleged.**

The Court previously stated that "it is doubtful that the state common law claims Plaintiffs assert . . . are viable based on the extraterritorial nature of the acts alleged." (D.E. 53 at 23.) That skepticism is well founded. State law is inapplicable to the alleged conduct of Central Romana— a company incorporated under the laws of the British Virgin Islands and based in the Dominican Republic (D.E. 53 at 2)—where that conduct occurred entirely outside of the United States and has no effect on Florida or any other State. The Court should dismiss the five claims Plaintiffs assert under state common law (Counts IV through VIII). (D.E. 56 at 19-22.)[1]

American courts recognize a "presumption that United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007). States are uniquely restricted in their ability to regulate extraterritorial conduct because they are "barred from 'intruding' on the exclusive national authority in foreign affairs." Restatement (Third) of Foreign Relations Law § 402 (1987); *see also Zschernig v. Miller*, 389 U.S. 429, 432 (1968) (invalidating an Oregon statute that was "an intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President and the Congress").

"Under recognized principles of international law, a nation state 'has jurisdiction to prescribe law with respect to . . . conduct outside its territory that has or is intended to have substantial effect *within its territory*.'" *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1355 (S.D. Fla. 2011) (*Chiquita I*), *rev'd on other grounds sub nom*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014) (quoting Restatement (Third) of Foreign Relations Law

---

[1] Plaintiffs expressly plead Counts IV and V under Florida law (D.E. 56 ¶¶ 80, 83), but they do not specify the state law under which they assert Counts VI, VII, or VIII. While Fanjul assumes that Plaintiffs assert Counts VI through VIII under Florida law as well, the analysis in this section equally bars those claims if asserted under the law of any other State.

of the United States § 402) (emphasis added). "[T]he right of the several States of the United States to prescribe laws relative to such extraterritorial conduct is recognized under the same principles of international law, so long as the exercise of such jurisdiction does not violate constitutional limitations." *Id.* (quoting Restatement of Foreign Relations Law § 402, Reporters' Note 5, cmt. k).

The analysis and holding in *Chiquita I* is directly on point. In that case, the court dismissed claims under the laws of Florida, New Jersey, Ohio, and the District of Columbia that were "premised on acts by Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia's civil war." *Id.* There were "no allegations that this conduct had or was intended to have a substantial effect within the states of Florida, New Jersey, Ohio, or the District of Columbia." *Id.* Nor were "the state-law claims alleged [in *Chiquita I*]—*e.g.*, ordinary tort claims for assault and battery, negligence, wrongful death, etc.—matters of universal concern recognized by the community of nations." *Id.* Accordingly, the court held that "the civil tort laws of Florida, Ohio, New Jersey and the District of Columbia do not apply to" the alleged torts. *Id.* This holding was "left undisturbed by the Eleventh Circuit" when it determined in *Cardona* that the district court lacked subject matter jurisdiction under the Alien Tort Statute. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1112 (S.D. Fla. 2016) (*Chiquita II*). Accordingly, on remand after *Cardona*, the district court dismissed the state law claims a second time as "barred on extraterritoriality grounds." *Id.*

In this case, Plaintiffs' state law claims are premised on "military-style incursions" mounted by "heavily armed agents, servants and/or employees of Central Romana," a company based in the Dominican Republic, against Dominican civilians "in the Villa Guerrero neighborhood of El Seibo, Dominican Republic." (D.E. 56 ¶ 29.) There are "no allegations that this conduct had or was intended to have a substantial effect within" Florida or any other State.

*Chiquita I*, 792 F. Supp. 2d at 1355. Nor are Plaintiffs' state law tort claims "matters of universal concern recognized by the community of nations." *Id.* Instead, they involve a quintessentially local dispute between private actors about the ownership of private property in another country. (D.E. 53 at 15-16.) State law is inapplicable to the extraterritorial conduct alleged in the Amended Complaint. *See Chiquita II*, 190 F. Supp. 3d at 1112-13; *Romero v. Drummond Co.*, 552 F.3d 1303, 1318 (11th Cir. 2008) (affirming dismissal of state tort claims based on extraterritorial conduct in Colombia "because Alabama law does not apply to injuries that occurred outside the state"); *Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1024 (S.D. Ind. 2007) (dismissing state law tort claims because "[p]laintiffs have not yet articulated a viable basis for applying California law or Indiana law to the management of the Plantation in Liberia").

Constitutional limitations on choice of law would dictate the same result. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). "When considering fairness in this context, an important element is the expectation of the parties." *Id.* at 822. Florida has no relevant contacts with Plaintiffs, Central Romana's alleged conduct, or the land dispute underlying this action. And neither Plaintiffs nor anyone involved in the alleged evictions of Dominican Republic citizens from land in the Dominican Republic, by a company headquartered in the Dominican Republic, would expect Florida law to apply to the resulting claims. *See Shutts*, 472 U.S. at 822 (holding that Kansas law could not apply to a leasing dispute

where none of "the parties had any idea that Kansas law would control").[2] Application of Florida law in this case would be "sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.*

Finally, the Amended Complaint reflects that the Court should dismiss Plaintiffs' state law claims as a matter of international comity and respect for the exclusive power of the federal government to manage foreign affairs. Plaintiffs allege that "the Dominican authorities have refused to take any action against Central Romana with respect to the unlawful evictions." (D.E. 56 ¶ 51.) Thus, Plaintiffs seek to have an American court apply American common law to *overrule* the determination of foreign governmental authorities about a local land dispute. That is precisely the sort of interference with foreign affairs that is beyond a State's purview. The United States has a strong interest in respecting the judicial and administrative processes of the Dominican Republic, which courts have found adequate. *See La Fontaine v. Signature Research, Inc.*, No. 14-24028, 2016 WL 880527, at *2-3 (S.D. Fla. Mar. 8, 2016); *Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008). Florida, on the other hand, has *no* interest in applying its own laws to this dispute. Under these circumstances, comity and the doctrine of federal foreign affairs require dismissal of Plaintiffs' common law claims. *See Zschernig*, 389 U.S. at 432 (refusing to apply state law under the foreign affairs doctrine); *Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014) (dismissing state law claims under the doctrine of comity "because of the strength of the U.S. government's interest in respecting Colombia's judicial process, the weakness

---

[2] Fanjul previously submitted the affidavit of Dr. Wanda Perdomo, an experienced lawyer in the Dominican Republic, who stated that, under Dominican Republic law, "Dominican law is exclusively applicable when the acts of a person that causes injury to another have been committed in the Dominican Republic unless the parties mutually agree to a different choice of law. Likewise, Dominican law is applicable when the person who allegedly caused the damage and the victim have their common place of residence in the Dominican Republic." (D.E. 31-2 at 4 ¶ 4.1.)

of California's interest in this case, the strength of Colombia's interests in serving as an exclusive forum, and the adequacy of the Colombian courts as an alternative forum").

### III.     Plaintiffs' claims are time-barred by the statutes of limitations that govern under Dominican Republic law.

Plaintiffs allege that the "Central Romana force" evicted them on January 26, 2016. (D.E. 56 at ¶ 29.) They did not bring this action until January 27, 2020. (D.E. 1.) That four-year delay defeats Plaintiffs' claims under the statutes of limitations applicable under Dominican Republic law.[3]

"When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp*., 550 F.3d 1031, 1033 (11th Cir. 2008). Florida law treats statutes of limitations as substantive law. *See Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1346 n.3 (11th Cir. 2013); *Fulton Cty. Adm'r v. Sullivan*, 753 So. 2d 549, 553 (Fla. 1999). Florida resolves choice of law questions "according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "[T]he Court must determine which forum has the most significant relationship to the occurrence in light of four factors: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Adios Aviation, LLC v. El Holdings I, LLC*, No. 15-61212,

---

[3] Plaintiffs allege Counts I through III under the laws of the Dominican Republic, but to the extent they attempt to recharacterize their common law claims as claims under Dominican Republic law or those claims are otherwise viable despite the entirely extraterritorial conduct alleged, Counts IV through VIII are also time-barred for the reasons stated in this section, based on the application of the statutes of limitations under Dominican Republic law.

2015 WL 12564317, at *4 (S.D. Fla. Sept. 29, 2015) (citing *Grupo Televisa, S.A.*, 485 F.3d at 1240 and § 145(2) of Restatement (Second) of Conflict of Laws).

The Dominican Republic clearly has the most significant relationship to Plaintiffs' claims and, therefore, its law determines the applicable statute of limitations. Plaintiffs' alleged injuries occurred in the Dominican Republic where they reside and were evicted. All of the alleged conduct by Central Romana that caused Plaintiffs' alleged injuries occurred in the Dominican Republic. Plaintiffs are citizens and residents of the Dominican Republic, and Central Romana—the only alleged tortfeasor—is based in the Dominican Republic. The parties have no "relationship" or connection, but if one exists, it is centered in the Dominican Republic. *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08-1916, 2020 WL 7388944, at *7 (S.D. Fla. Sept. 30, 2020) (*Chiquita III*) (applying the statute of limitations under Colombian law because Columbia "is the situs of the alleged tortious conduct" and "all Plaintiffs are Colombian citizens asserting Colombian law claims"); *Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1271 (S.D. Fla. 2018) (finding that the location where the injury occurred was generally decisive in determining the applicable choice of law); *Mamani v. Berzain*, 309 F. Supp. 3d 1274, 1311 (S.D. Fla. 2018) (finding that Bolivia had the most significant relationship to the events at issue, because the parties were all Bolivian citizens, and the decedents were Bolivian citizens who were killed in Bolivia by the Bolivian military); *Castillo v. Cessna Aircraft Co.*, 712 F. Supp. 2d 1306, 1310 (S.D. Fla. 2010) (holding that Guatemalan law governed all of the substantive issues in a tort action filed on behalf of five individuals who died in an airplane crash in Guatemala).

To determine the applicable statute of limitations under Dominican Republic law, Federal Rule of Civil Procedure 44.1 gives the Court authority to "consider any relevant material or source." And because the determination of foreign law is "treated as a ruling on a question of law,"

Fed. R. Civ. P. 44.1, the Court may consider "foreign law materials outside the pleadings in ruling on a motion to dismiss." *Chiquita III*, 2020 WL 7388944, at \*9; *see also Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1350 (11th Cir. 2011); *de Fontbrune v. Wofsy*, 838 F.3d 992, 998 (9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 18-679, 2019 WL 1925499, at \*3 (W.D. Tex. Apr. 30, 2019). Thus, the Court may judicially notice the laws of the Dominican Republic and determine the content of Dominican law based on expert reports, articles, treatises, or judicial opinions. *See Chiquita III*, 2020 WL 7388944, at \*9.

The record already reflects the statutes of limitations that apply under Dominican Republic law. Fanjul previously submitted the affidavit of Dr. Wanda Perdomo, an experienced lawyer practicing in the Dominican Republic. (D.E. 31-2.) In her affidavit, Dr. Perdomo stated that Article 2271 of the Code of the Dominican Republic imposes a six-month statute of limitations from the occurrence of an unintentional act or omission that causes harm, and Article 2272 of the Civil Code of the Dominican Republic imposes a twelve-month statute of limitations from the occurrence of intentional wrongdoing. (*Id.* at 5 ¶ 5.2.)

Dr. Perdomo's opinion is consistent with the plain language of Articles 2271 and 2272, translations of which are attached as part of Exhibit 1. Other American courts that have examined the question agree that "Article 2271 of the Code provides for a six month statute of limitations period for a quasi-delictual action, which is an unintentional tort[,] [and] Article 2272 of the Code provides for a one year statute of limitations period for intentional torts." *Pallano v. AES Corp.*, No. 11-21, 2011 WL 2803365, at \*4 (Del. Super. Ct. July 15, 2011); *see also Petroholding Dominicana, Ltd. v. Gordon*, No. 18-1497, 2019 WL 2343658, at \*5 (S.D.N.Y. June 3, 2019) (recounting evidence of a one-year statute of limitations under Dominican Republic law for fraud

claims and fiduciary duty claims sounding in tort); *Monegro v. AES Corp.*, No. 10-4054, 2013 WL 2156258, at *1 (Del. Super. Ct. May 17, 2013) (following *Pallano*).

When the allegations in a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Chiquita III*, 2020 WL 7388944, at *8 (dismissing under Rule 12(b)(6) based on the application of a statute of limitations under Colombia law). In this case, it is "apparent from the face of the complaint" that Plaintiffs' claims are time-barred. *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (citation omitted).

Plaintiffs brought this case four years after they were evicted and three years after the applicable statutes of limitations under Dominican Republic law expired. Plaintiffs cannot and do not allege they were unaware that agents of Central Romana evicted them on January 26, 2016, destroyed their homes, and caused them physical and emotional harm. (D.E. 56 at ¶¶ 29-33.) Indeed, Plaintiffs allege they were *present* during their evictions and the destruction of their homes. (*Id.*). And they allege no reason why they could not have asserted their claims within the applicable limitations periods. The Court should therefore dismiss Plaintiffs' claims as time-barred.

**IV.    The Court should dismiss this case because Central Romana is a necessary and indispensable party, without which the case may not proceed.**

Dismissal is also required under Rule 12(b)(7) because Central Romana is an indispensable party under Rule 19 that cannot be joined without destroying the Court's alienage jurisdiction. (D.E. 53 at 20.) In evaluating whether a party is indispensable, "pragmatic concerns" control. *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). Although "[t]here is no prescribed formula for determining in every case whether a person is an indispensable party," *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 117 n.14

(1968), courts typically apply a two-step analysis that looks first at "whether the person in question should be joined" under the standards of Rule 19(a). *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999). "This question has been commonly analyzed as whether the non-joined party is 'necessary.'" *Kernel Records Oy v. Mosley*, No. 09-21597, 2010 WL 2812565, at *14 (S.D. Fla. July 5, 2010). If the person should be joined, "but for some reason cannot be, the court must analyze the factors outlined in Rule 19(b) to determine whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable.'" *Laker Airways, Inc.*, 182 F.3d at 847 (quoting Fed. R. Civ. P. 19(b)).

### A. Central Romana is a prototypical indispensable party because Plaintiffs seek to hold Fanjul liable based solely on Central Romana's conduct.

The controlling fact in the Rule 19 analysis is that Central Romana engaged in *all* of the alleged conduct for which Plaintiffs seek to hold Fanjul liable. Case law from the parent-subsidiary context is instructive.[4] "Generally, when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001). In such cases, where the subsidiary is the "primary participant" in the conduct underlying a plaintiff's claims, the law is "very clear" that the subsidiary is an indispensable party. *Lopez v. Shearson Am. Express, Inc.*, 684 F. Supp. 1144, 1147 (D.P.R. 1988); *see also Freeman v. Nw. Acceptance Corp.*,

---

[4] Plaintiffs allege that Central Romana is a subsidiary of Fanjul. (D.E. 56 ¶ 42.) That allegation is incorrect as a matter of law because, as Plaintiffs allege (*id.* ¶¶ 37a, 37c, 42), Fanjul indirectly owns only 35% of Central Romana's stock. *See* Black's Law Dictionary (11th ed. 2019) (defining a "subsidiary corporation" as a company "in which a parent corporation has a controlling share" and defining a "parent corporation" as a company with "a controlling interest in another corporation . . . , usu[ally] through ownership of more than one-half the voting stock)"). Nonetheless, for purposes of the indispensable party analysis, case law from the parent-subsidiary context is analogous to this case.

754 F.2d 553, 559 (5th Cir. 1985) (collecting cases); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1520-22 (D. Minn. 1996) (collecting cases and holding that when a plaintiff seeks to hold a parent company liable for the conduct of a foreign subsidiary, the subsidiary is necessary and indispensable).

In *Freeman*, for example, the plaintiffs named as a defendant a parent corporation but did not sue the parent's subsidiary, whose presence could have destroyed diversity jurisdiction. 754 F.2d at 554-55. The Fifth Circuit noted that the plaintiffs sought "to impose liability on [the parent] not for its own acts, but for those of [the subsidiary]." *Id.* at 559. The court found that in such a situation—when the absent party was not just an "active participant" in the alleged conduct, but the "primary participant"—the subsidiary was indispensable. *Id.*

That analysis controls here. Central Romana is the primary—and *only*—participant in causing Plaintiffs' alleged harm. Plaintiffs allege that "the Central Romana force" alone evicted them, "destroyed their homes and personal property," "forcibly prevented the Plaintiffs and their neighbors from leaving the area," "physically injured many people," "aimed their weapons at the Plaintiffs and others," "made direct threats of physical harm," and caused Plaintiffs "psychological and emotional trauma." (D.E. 56 at ¶¶ 29-33.) Although Plaintiffs sought leave to amend their complaint "to more clearly plead" that Fanjul made decisions about the evictions (D.E. 53 at 23), they added no such allegations to the Amended Complaint. Plaintiffs seek to hold Fanjul liable solely for Central Romana's conduct, not any conduct by Fanjul. (D.E. 56 ¶ 35.) Accordingly, Central Romana is an indispensable party.

**B.    Central Romana is also necessary and indispensable to this lawsuit under a traditional two-step Rule 19 analysis.**

The result is the same under a two-step analysis that asks if Central Romana is a "necessary" party under Rule 19(a) and "indispensable" under Rule 19(b).

*First*, the Eleventh Circuit has explained that an absent party "will be considered a necessary party when [it] 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'" *Laker Airways, Inc.*, 182 F.3d at 848 (quoting *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971)).[5] That is because, in such circumstances, the plaintiff's claims "necessarily require that a court evaluate [the absent party's] conduct in relation to [the plaintiff], thereby substantially implicating [the absent party's] interest." *Id*.

As discussed above, Central Romana was the only "active participant" in the conduct that allegedly caused Plaintiffs' harm. As a result, "any trial here will largely be a trial of the conduct of [Central Romana]," *Polanco*, 941 F. Supp. at 1523, and Plaintiffs' claims would necessarily require this Court to determine whether Central Romana acted unlawfully. Such a determination implicates Central Romana's rights and interests, and Central Romana's absence from this case will "impair or impede [its] ability to protect" those interests. Fed. R. Civ. P. 19(a)(1)(B)(i). For example, a party could potentially use a judgment against Fanjul in this case as evidence of Central Romana's liability in a future case. *See* Fed. R. Evid. 201; Dominican Republic Civil Code art. 1353 (attached in Exhibit 1); *Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) (holding that an absent party's interests might be impaired because "an adverse ruling would be a persuasive precedent in a subsequent proceeding"). Further, fragmented litigation about Plaintiffs' evictions raises the specter of duplicative actions against Fanjul, creating "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Thus, Central Romana is a necessary party under Rule 19(a).

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Second*, the Court cannot "in equity and good conscience" permit this case to proceed without Central Romana under the factors set out in Rule 19(b). A judgment rendered in Central Romana's absence "might be prejudicial" to Central Romana because, "even if not formally preclusive, an adverse ruling would have an adverse precedential effect on [Central Romana's] position in future litigation." *Polanco*, 941 F. Supp. at 1521; *see also Schutten v. Shell Oil Co.*, 421 F.2d 869, 874-85 (5th Cir. 1970). Further, Fanjul has a clear interest in having liability from Central Romana's conduct decided consistently as to all supposed wrongdoers—an interest undermined by the prospect of litigating Central Romana's conduct piecemeal without Central Romana's presence. *See Schutten*, 421 F.2d at 874 (noting that "one of the purposes . . . of Rule 19 is the avoidance of multiple litigation of essentially the same issues"). Thus, the first and second factors under Rule 19(b) support a finding that Central Romana is an indispensable party because this case will cause potential prejudice that the Court cannot fashion a judgment to lessen or avoid.

The third factor under Rule 19(b) considers whether the Court could render an adequate judgment if the action were to proceed without Central Romana. A judgment is "adequate" if it furthers the public interest in a "complete, consistent, and efficient" resolution of controversies. *Provident Tradesmens Bank & Tr. Co.*, 390 U.S. at 111. As explained above, allowing this action to proceed could result in separate actions against Fanjul and Central Romana involving identical facts. Such a result does not further the public interest because it creates inefficient duplicative litigation and opens the door for inconsistent outcomes on the same issues. *See id.*

Finally, the fourth Rule 19(b) factor favors dismissal because Plaintiffs appear to have an alternative forum available in the Dominican Republic, their home country and the location of all of Central Romana's alleged conduct. Plaintiffs assert that "the Dominican Republic is not an

adequate forum" because "[t]he Dominican courts are notoriously corrupt." (D.E. 56 at ¶¶ 57, 56.)[6] However, that unsubstantiated charge does not "enjoy a particularly impressive track record" in our local federal courts, *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997), which have repeatedly found that Dominican Republic courts are adequate and available. *See La Fontaine*, 2016 WL 880527, at *2-3; *Perez-Lang*, 575 F. Supp. 2d at 1349; *see also Group CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, No. 11-729, 2012 WL 3206671, at *1 (S.D. Ala. Aug 7, 2012); *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 567 (D.P.R. 1996). Further, as detailed in the affidavit of Dr. Perdomo, courts in the Dominican Republic are organized, accessible, independent, and function on a streamlined process. (D.E. 31-2 §§ 2, 5, 7.)

Thus, all four criteria of Rule 19(b) lead to a finding that Central Romana is an indispensable party and that this dispute cannot be adjudicated in equity and good conscience without Central Romana. Because Central Romana is both necessary and indispensable under Rule 19, and because it is not feasible to rejoin Central Romana without stripping this Court of jurisdiction (D.E. 53 at 20), the Court should dismiss the Amended Complaint with prejudice.

## <u>CONCLUSION</u>

Fanjul requests that the Court dismiss the Amended Complaint with prejudice.

---

[6] The numbering of the paragraphs in the Amended Complaint is out of order beginning on page 14, affecting the numbering of the paragraphs on the remaining pages. For clarity, this citation refers to the first two paragraphs that appear on page 14 of the Amended Complaint under Heading C, which are designated as paragraphs "57" and "56."

Respectfully submitted,

/s/ Richard D. Shane
Richard D. Shane, Esq. (FBN 70611)
rdshane@duanemorris.com
DUANE MORRIS LLP
201 South Biscayne Boulevard, Suite 3400
Miami, FL 33131
Tel: (305) 960-2200

Robert M. Palumbos, Esq. (pro hac vice)
rmpalumbos@duanemorris.com
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1111

*Counsel for Fanjul Corp.*