UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80123-CIV-RUIZ/REINHART

MARIA MAGDALENA ALVAREZ GALVEZ, et al.,

        Plaintiffs,

vs.

FANJUL CORP.,

        Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (ECF NO. 63) AND PLAINTIFFS' CROSS-MOTION FOR JURISDICTIONAL DISCOVERY (ECF NO. 68)**

Currently before me are Defendant's Motion to Dismiss the Amended Complaint (ECF No. 63) and Plaintiffs' Cross-Motion for Leave to Conduct Jurisdictional Discovery (ECF No. 68), which were referred to me by the Honorable Rodolfo A. Ruiz. ECF Nos. 64, 70. In addition to the motions, I have reviewed the Complaint (ECF No. 1), Judge Ruiz's Order dismissing the Complaint with leave to supplement (ECF No. 53), the Amended Complaint (ECF No. 56), Plaintiffs' response and Defendant's reply to the motion to dismiss (ECF Nos. 67, 71), as well as Defendant's response and Plaintiffs' reply to their cross-motion for discovery (ECF Nos. 72, 73). For the reasons that follow, I recommend that Defendant's motion to dismiss (ECF No. 63) be **GRANTED** and Plaintiffs' cross-motion for jurisdictional discovery (ECF No. 68) be **DENIED.**

## BACKGROUND

In their initial Complaint, Plaintiffs alleged that on January 26, 2016, then-Defendant Central Romana Corp., a sugar company based in the Dominican Republic ("DR"), forcibly evicted Plaintiffs from their DR homes, destroyed Plaintiffs' homes and their personal property,

and caused Plaintiffs to suffer physical and emotional injury. ECF No. 1 at ¶¶ 36-40. The Complaint alleged that Central Romana is the alter-ego of Defendant Fanjul Corp. ("Fanjul"), a Florida company that Plaintiffs allege was likely involved in the decision to forcibly evict them. *Id.* at ¶ 50(a).

Judge Ruiz dismissed the Complaint without prejudice, finding Plaintiffs' allegations that Fanjul owns 35% of Central Romana's shares through a subsidiary and that Fanjul and Central Romana share four overlapping officers and directors were "insufficient to plead an alter ego theory." ECF No. 53 at 21-22. Judge Ruiz noted that Plaintiffs failed to allege "how Fanjul controls or dominates Central Romana to such an extent that the Court should disregard the corporate entity," and Plaintiffs failed to "advance any allegations of improper or fraudulent use of the corporate form." *Id.* at 22. Similarly, Judge Ruiz determined that Plaintiffs "alleged insufficient facts to support Fanjul's vicarious liability based on general agency principles" because "the Complaint is devoid of allegations" supporting the requisite elements of "acknowledgement, acceptance, or control." *Id.* at 22-23. Accordingly, Judge Ruiz concluded that "Plaintiffs have insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana." *Id.* at 23. Judge Ruiz granted Plaintiffs' motion to amend the Complaint "to more clearly allege Fanjul's involvement in the decisions that violated 'Plaintiffs' right to judicial process and due process,'" however, he did not grant Plaintiffs' request to take brief jurisdiction-related discovery, noting that he had previously stayed discovery. *Id.* at 4.

Thereafter, Plaintiffs filed their Amended Complaint, dropping Central Romana as a Defendant and claiming that joinder is not necessary because Central Romana is not an

indispensable party.[1] Plaintiffs also added the following allegations in an attempt to support their theory of vicarious liability:

> 36. Fanjul controls and dominates Central Romana to such an extent that the Court should disregard Central Romana's purported separate and distinct corporate existence. The basis of Fanjul's control and dominance of Central Romana principally can be found in Fanjul's corporate structure and the control exercised by the members of the Fanjul family, who own and control Fanjul, over the operations of Central Romana.

*       *       *

> 38. Relevant documents of Florida Crystals and Flo-Sun, Inc. (the predecessor of Fanjul) show the control and dominance Flo-Sun and Florida Crystals exercised over Central Romana. For example, in an organization chart, Central Romana is described as a subsidiary of Florida Crystals (The Fanjuls). *See* Exhibit A attached hereto and made a part hereof. Moreover, in a brochure produced by Flo-Sun and the Fanjul Group, Flo-Sun represents that it has been involved in the sugar business for 150 years, that it produces 10 million tons of sugar cane and 3.5 million tons of refined sugar, that it is the "leading producer of refined sugar in … the Dominican Republic," that it owns 250,000 acres of land in the Dominican Republic, and that its holdings in the Dominican Republic include the Casa de Campo Resort. *See* Exhibit B attached hereto and made a part hereof. Central Romana purchased the Casa de Campo Resort in the late 1980s. *See* Exhibit C attached hereto and made a part hereof.

*       *       *

> 40. By virtue of their positions as senior officers and directors of Central Romana, Alfonso Fanjul, Jr., Jose Fanjul, Sr. and Jose Fanjul, Jr. control and dominate the Board of Directors of Central Romana. Moreover, because they are also senior officers and directors of Fanjul, and are part of the Fanjul family group that controls Fanjul, Fanjul controls and dominates Central Romana.

*       *       *

---

[1] As Judge Ruiz noted in his decision, Plaintiffs had to drop Central Romana from the case in order to maintain alienage jurisdiction, thus providing a basis for this Court's subject matter jurisdiction. ECF No. 53 at 5, 19-20, 24.  Alienage jurisdiction is "a form of diversity jurisdiction under which federal courts may hear cases between "citizens of a State and citizens or subjects of a foreign state." *Id.* (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) (quoting 28 U.S.C. § 1332(a)(2)).

42. Through the above-described interlocking directorates and officerships, Fanjul dominates and controls Central Romana to such an extent that Central Romana's purported independent existence is fictitious because Central Romana does not operate autonomously. Moreover, although ostensibly a separate and distinct corporation, Central Romana is in fact a subsidiary of Fanjul, in part, by virtue of Fanjul's ownership of 35% of Central Romana stock.

*          *          *

45. Fanjul relies almost exclusively on Central Romana to supply raw sugar and refined sugar products to the entities that comprise its sugar empire. For example, during the period November 27, 2019 through April 1, 2021, of the 46 shipments of sugar products Central Romana made to the United States, 8 were made to Okeelanta Corp. and 1 to the Central Romana facility in Yonkers, New York. *See* Exhibit D attached hereto and made a part hereof.

46. By virtue of these facts, Fanjul had the ability and the right to supervise, and *on information and belief* did supervise, Central Romana employees and Central Romana ownership, including the aforesaid members of the Fanjul family.

47. By virtue of these facts, *on information and belief*, the directors of Fanjul determine the policies of Central Romana with respect to land acquisition and related aspects of its sugar operations, and Central Romana is the vehicle through which Fanjul carries on its activities in the Dominican Republic.

48. Fanjul engaged in improper conduct with respect to the events that give rise to this case because it used Central Romana to accomplish an illegal purpose – the unlawful eviction of the Plaintiffs from their homes and the unlawful taking of Plaintiffs' land. Fanjul knew that by doing so it would significantly increase its revenues derived from the cultivation of sugar cane by Central Romana on land it unlawfully obtained from the Plaintiffs.[2]

49. Fanjul ratified Central Romana's unlawful evictions by acquiescing in, ignoring the public and international outcry about the unlawful evictions and failing to direct Central Romana to take any action to remedy them when it had the power and right to do so, in order to obtain a benefit for itself – increased land ownership on which to plant sugar cane and reap the corresponding financial benefit from its cultivation, harvesting, refining and sale.

*          *          *

---

[2] Plaintiffs contend that "Central Romana's purpose in undertaking the unlawful forcible evictions was to improperly obtain additional land at no cost in order to expand its sugar cane operations and substantially increase the revenues it derives from the ultimate sale of raw sugar and refined sugar products." *See* Amended Complaint at ¶ 34.

4

> 55. Central Romana was acting as Fanjul's agent with respect to the unlawful evictions, it accepted the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's control with respect to the unlawful evictions.

ECF No. 56 (emphasis added).

On June 7, 2021, Defendant Fanjul moved to dismiss the Amended Complaint for a variety of reasons. ECF No. 63. Specifically, Fanjul contends that, once again, Plaintiffs have failed to allege facts sufficient to support their vicarious liabilty claims under Rule 12(b)(6). The motion also contends that Plaintiffs' claims are time-barred, that Central Romana is an indispensable party under Rule 19 and Plaintiffs' failure to join it must result in dismissal, even though Fanjul also acknowledges that joinder of Central Romana would deprive this Court of subject matter jurisdiction under Rule 12(b)(1).

In response, Plaintiffs concede that Counts I-III are time-barred under Dominican law. ECF No. 67-1 at 11. Nevertheless, Plaintiffs move for jurisdictional discovery on the issue of vicarious liability on the common law claims in Counts IV-VIII. ECF No. 67/68. According to Plaintiffs, they need discovery to establish "the control and domina[n]ce exercised by [Defendant] Fanjul over [non-party] Central Romana." ECF No. 67-1 at 7.[3]

> Plaintiffs seek discovery on the following topics:
>
> 1. The participation of Alfonso Fanul, Jr., Jose Fanjul, Sr., Jose Fanjul, Jr., Andres Fanjul and Alexander Fanjul in the operations and affairs of Central Romana, which would include review and analysis of Fanjul and Central Romana Board of Directors Meeting Minutes, and Fanjul and Central Romana Board of Directors' Committee Meeting Minutes;
>
> 2. The participation of Alfonso Fanjul, Jr., Jose Fanjul, Sr., and Jose Fanjul, Jr. in particular, and the other Fanjul Board members in general, in Central Romana's land

---

[3] In their response, Plaintiffs contend that if they can establish that Central Romana is the alter ego of Fanjul, then they need not join Central Romana as a defendant, and thus, the Court will retain its subject matter jurisdiction. ECF No. 67-1 at 12.

5

acquisition activities and the creation and implementation of Central Romana's land acquisition and development policies and practices;

3. The operational relationship between Central Romana and Florida Crystals Corp.;

4. The operational relationship between Florida Crystals Corp. and Fanjul;

5. The operational relationship between Central Romana, Okeelanta Corp. and Fanjul;

6. The extent to which Alfonso Fanjul and Jose Fanjul have obtained, or participated in obtaining, financial support for Central Romana;[4]

7. The extent to which the officers and directors of Fanjul have the right to supervise or direct, and do supervise or direct, the activities of Central Romana officers, directors and employees;

8. Central Romana's knowledge that evicting the Plaintiffs would result in a financial benefit to Fanjul; and

9. That Central Romana effectively exists to supply the sugar requirements of the companies that comprise the Fanjul sugar empire.

## DISCUSSION

1. Fanjul's Motion to Dismiss

    a. *Legal Standard*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions"

---

[4] According to Plaintiffs, "Defendant admits that Alfonso Fanjul and Jose Fanjul exercise some degree of financial control over Central Romana," and discovery "will elucidate the extent of that control . . . [and] whether Fanjul exerts dominance and control over Central Romana to such an extent that vicarious liability can be established." ECF No. 67-1 at 8, n.1 (citing 63 at 6).

or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U. S. at 678 (*quoting Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp*., 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679.  Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth.  *See Scott v. Experian Info. Sols., Inc*., 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

      b.  *Sufficiency of Allegations under Rule 12(b)(6)*

In its motion to dismiss, Fanjul contends that Plaintiffs have simply "recycled their allegations" regarding the interconnected relationship between Fanjul and Central Romana in their Amended Complaint, and thus, "the Court's earlier analysis applies and dictates the same result." ECF No. 63 at 3.

In his prior decision, Judge Ruiz listed the three ways a parent company can be held liable for the acts of its subsidiaries: "(1) an alter ego theory to 'pierce the corporate veil;' (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the wrong complained of."  ECF No. 53 at 20 (*quoting Salinero v. Johnson & Johnson*, No. 18-23643, 2019 WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019)).  Judge Ruiz noted that "[t]o establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that '(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.'"  ECF No. 53 at 20-21 (quoting *Molinos*, 633 F.3d at 1349 and *Gasparini v.*

*Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008)); *see also Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1320 (11th Cir. 1998).

Judge Ruiz also set forth the law regarding vicarious liability based on general agency principles, noting that under Florida law, to hold a parent liable as the principal of a subsidiary-agent, Plaintiffs must establish: "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."  ECF No. 53 at 22 (quoting *Salinero*, 2019 WL 4585215, at *3 and S*tate v. Am. Tobacco Co*., 707 So. 2d 851, 854 (Fla. 4th Dist. Ct. App. 1998)); *see also Brusherd v. Ford Motor Co*., No. 08-513, 2009 WL 10670567, at *4 (M.D. Fla. Sept. 18, 2009).  The parent corporation "must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."  *Salinero*, 2019 WL 4585215, at *3 (internal quotation marks omitted).

I have reviewed the new allegations and attachments to the Amended Complaint, and I find that they do not sufficiently develop the initial pleading so as to warrant a different outcome. Contrary to Plaintiffs' claim that their Amended Complaint alleges "facts demonstrating Fanjul's control and dominance over the activities of Central Romana in general, and in particular with respect to the misconduct at issue in this case" (ECF No. 67-1 at 4), I find that Plaintiffs have not alleged any new facts; instead they offer only new speculation and legal conclusions.  Although Plaintiffs have rephrased some of their allegations, they remain factually insufficient.  Once again, Plaintiffs rely on the corporate structure of the two entities, highlighting Fanjul's 35% ownership of Central Romana's stock, and the overlapping officers and directors.  Plaintiffs repeatedly refer to the "control and dominance" Fanjul has over Central Romana, but they do not cite to any new facts to support these allegations; nor do the exhibits attached to the Amended Complaint provide

9

sufficient support. Plaintiffs contend that Central Romana's "independent existence is fictitious because [it] does not operate autonomously" (ECF No. 56 at ¶ 42), but they offer no facts to support this allegation.

Paragraphs 46 and 47 of the Amended Complaint contend that Central Romana was "the vehicle through which Fanjul" operated in the DR, and that Fanjul supervised Central Romana employees and determined Central Romana's land acquisition policies. ECF No. 56. However, these allegations are based solely "on information and belief," and thus, as noted above, they are not entitled to the assumption of truth. *See Scott*, 2018 WL 3360754, at *6.

Similarly, Plaintiffs allege that "Fanjul engaged in improper conduct . . . because it used Central Romana to accomplish . . . the unlawful eviction . . .[and] taking of Plaintiffs' land" (ECF No. 56 at ¶ 48), and that Fanjul "had the power and right" to "direct" Central Romana to "remedy" the situation. *Id.* at ¶ 49. But these allegations are not substantiated with any facts showing that Fanjul was behind the eviction, or that as a minority shareholder, Fanjul had the power to direct Central Romana to do anything, much less provide reparations for the losses it inflicted.

Finally, I reject Plaintiffs' attempt to add new allegations regarding the general agency principles that were absent from the initial Complaint. Plaintiffs' new contentions that "Central Romana was acting as Fanjul's agent" because it "*accepted* the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's *control*" (ECF No. 56 at ¶ 55) (emphasis added) are nothing more than unsupported legal conclusions. In any event, Plaintiffs do not allege that Fanjul ever acknowledged that Central Romana would act on its behalf

in conducting the evictions (the third element necessary to establish agency), much less provide any facts to support such a claim.[5]

Given Plaintiff's concession that Counts 1-III are time-barred, there are five counts remaining in the Amended Complaint. Fanjul's potential liability on these five counts, as well as Plaintiffs' claim that Central Romana is not an indispensable party, are premised on Plaintiffs' theory of vicarious liability or that an agency relationship existed between Fanjul and Central Romana. Plaintiffs have failed to meet their burden of alleging new facts sufficient to support these claims, thus, the Amended Complaint must be dismissed in its entirety. Accordingly, I need not consider Fanjul's argument that the common law claims in Counts IV-VIII of the Amended Complaint are time-barred, nor must I evaluate Fanjul's contention that Plaintiffs' common law claims must be dismissed because Florida state law is inapplicable to the extraterritorial conduct alleged in the Amended Complaint.

2. Plaintiffs' Motion for "Jurisdictional" Discovery

"It is no small thing to file a lawsuit that brings someone involuntarily into federal court. Prior to filing such a lawsuit, a plaintiff is required to conduct a meaningful investigation to determine that the facts permit the defendant to be sued in the court where the lawsuit will be filed."

---

[5] I reject Plaintiffs' claim that Paragraph 49 is "sufficient to establish [ ] acknowledgement by Fanjul that Central Romana would act on its behalf." ECF No. 67-1 at 9. Paragraph 49 contends that Fanjul "ratified Central Romana's unlawful evictions by acquiescing in, ignoring the public and international outcry about the unlawful evictions and failing to direct Central Romana to take any action to remedy them . . ." ECF No. 56. Putting aside whether ratification through acquiescence is sufficient to establish acknowledgement of an agency relationship, I reiterate my finding above, that there is no evidence that Fanjul had the power to direct Central Romana to do anything. Therefore, Fanjul's failure to issue directives does not establish that it ratified Central Romana's conduct, let alone that Fanjul acknowledged Central Romana was acting on its behalf.

*In re Zantac (Ranitidine) Products Liab. Litig.,* 20-MD-2924, 2020 WL 6907056, at *1 (S.D. Fla. Nov. 24, 2020) (J. Reinhart). Post-filing discovery is not a substitute for pre-filing investigation and factual development. A Court need not defer ruling on a motion to dismiss "in order to allow the plaintiff to look for what the plaintiff should have had – but did not – before coming through the courthouse doors." *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1216 (11th Cir. 2007).

It is well settled that district courts have the discretion to order the discovery of facts necessary to determine their jurisdiction over the merits. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Here, Judge Ruiz has exercised that discretion by staying discovery.

Plaintiffs contend that they are seeking "jurisdictional discovery," but that is incorrect. First, Fanjul has not raised a jurisdictional defense. Its motion is filed under Rule 12(b)(6), not Rule 12(b)(1) or 12(b)(2). *See In re Zantac* at *2 (qualified right to jurisdictional discovery exists only in response to a factual jurisdictional challenge). Second, Fanjul waived any personal jurisdiction defense by not raising it in its Motion to Dismiss. Fed. R. Civ. P. 12(h)(1). Third, there is no dispute that Fanjul and the Plaintiffs are diverse for purposes of subject matter jurisdiction. Because jurisdiction is not in dispute, there is no basis for jurisdictional discovery, even if that were what Plaintiffs want.

In fact, Plaintiffs want something different. The proposed discovery is designed to show that Fanjul can be held legally responsible for the actions of Central Romana. Its purpose is to help Plaintiffs state a claim for which relief can be granted *against Fanjul*. That is merits discovery. Merits discovery is limited to evidence relevant to the well-pled claims in the Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1). For the reasons stated above, there are no well-pled claims against Fanjul, so Plaintiffs are not entitled to the discovery that they request. *See Turner v. Costa Crociere S.P.A.*, No. 1:20-CV-21481-KMM, 2020 WL 9071486, at *6, n.4 (S.D. Fla.

Aug. 23, 2020) (J. Moore) ("a plaintiff may not argue that it requires discovery to defeat a motion to dismiss for failure to state a claim.") (*citing Inman v. Am. Paramount Fin.*, 517 F. App'x 744 at 748–49 (11th Cir. 2013).[6]

## RECOMMENDATION

Accordingly, I recommend that:

1. Defendant Fanjul's motion to dismiss (ECF No. 63) be **GRANTED;** and
2. Plaintiffs' request to take jurisdictional discovery (ECF No. 68) be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

---

[6] Without citing any legal support, Plaintiffs contend in their response/cross-motion that "Defendant's assertion that the Amended Complaint fails to allege facts sufficient to hold Fanjul vicariously liable fo[r] the misconduct of Central Romana is a challenge to this Court's subject matter jurisdiction." ECF No. 67-1. I disagree. Subject matter jurisdiction goes to the Court's power to adjudicate a particular dispute, not to whether a party can prevail in that dispute.

**DONE and SUBMITTED** in Chambers this 4th day of August, 2021, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE